IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL JESTER & PENN RIDGE :
FARMS, LLC, :
    Plaintiffs :
: No. 1:15-cv-00205
    v. :
: (Judge Kane)
ROBERT HUTT, FANTASY LANE :
THOROUGHBRED RACING :
STABLE, LLC, FANTASY LANE :
STABLE, INC., & FANTASY :
LANE THOROUGHBREDS :
    Defendants :

# MEMORANDUM

This matter is before the Court on Defendants'[1] fully briefed "Motion for a New Trial or Remittitur or, in the Alternative, to Alter or Amend the Judgment," following a three-day jury trial awarding Plaintiffs Michael Jester ("Plaintiff Jester"), and Penn Ridge Farms, LLC ("Plaintiff Penn Ridge"), $199,999.00 in damages on their breach of contract and defamation claims.[2] (Doc. No. 78.) Upon consideration of the briefing filed in connection with the motion (Doc. Nos. 92, 93, 94), the evidence submitted at trial, including the transcripts of witness testimony (Doc. Nos. 83, 84, 85, 86), and the applicable law governing motions filed pursuant to Federal Rules of Civil Procedure 59(a) and 59(e), the Court will grant in part and deny in part Defendants' motion.

---

[1] The Defendants named in this action, reflecting the parties' joint stipulation to amend the caption prior to trial (Doc. Nos. 65, 66), are: Robert Hutt ("Defendant Hutt"), Fantasy Lane Thoroughbred Racing Stable, LLC, Fantasy Lane Stable, Inc., and Fantasy Lane Thoroughbreds (herein referred to as "Defendant Fantasy Lane" and "Fantasy Lane entities").

[2] As the parties are intimately familiar with the background of this case, the Court will not engage in a lengthy recitation of the facts, except as necessary for the disposition of the pending motion. (Doc. No. 42, 43.)

## I. LEGAL STANDARD

Defendants' motion invokes Federal Rules of Civil Procedure 59(a) and 59(e), which permit the filing of motions for a new trial and motions for alteration or amendment of a judgment, respectively. Under Rule 59(a), the "court may, on motion, grant a new trial on all or some of the issues – and to any party – . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Historically recognized grounds for a new trial include claims that the "verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the" moving party. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940)).

"The applicable standard applied by the trial court in its exercise of discretion [in granting or denying a rule 59 motion] varies with the grounds for which relief is sought." 12 Moore's Federal Practice ¶ 59.13(1), at 59–39 (3d ed. 2016). "New trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." Williams v. Consol. Rail Corp., 926 F.2d 1344, 1353 (3d Cir. 1991). Indeed, the power to grant a new trial is necessarily limited "to ensur[ing] that a district court does not substitute its 'judgment of the facts and the credibility of the witnesses for that of the jury.'" Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 211 (3d Cir. 1992) (quoting Lind v. Schenley Indus., Inc., 278 F.2d 79, 90 (3d Cir.1960)). "The decision to grant or deny a new trial is confided almost entirely to the discretion of the district court." Blancha v. Raymark Indus., 972 F.2d 507, 512 (3d Cir. 1992) (citing Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980)).

Rule 59(e), by contrast, permits the court to alter or amend a judgment upon the filing of a motion. Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of a judgment."). A party is entitled to have a court alter or amend a judgment in the following circumstances: "(1) an intervening change in the controlling law; (2) the availability of new evidence . . . or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Café ex rel. Lou–Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).

## II. DISCUSSION

### A. PLAINTIFFS' BREACH OF CONTRACT CLAIM

Defendants advance several grounds for a new trial or alternatively, for alteration of the judgment, as to Plaintiffs' breach of contract claim. The Court considers each of those grounds in turn.

#### 1. Whether Defendants are Entitled to a New Trial Because the Weight of the Evidence Demonstrates that Plaintiff Penn Ridge, Rather Than Defendant Fantasy Lane, First Materially Breached the Contract Between the Parties

As an initial matter, Defendants argue that they are entitled to a new trial, or alternatively, amendment of the judgment, because the weight of the evidence demonstrates that it was Plaintiff Penn Ridge, rather than Defendant Fantasy Lane, that first materially breached the subject contract between the parties. (Doc. No. 92 at 15.) In support of their position that they were relieved from any obligation to perform under the contract due to Plaintiffs' initial breach, Defendants point to the testimony of Brian Montefusco, who testified by deposition that his calls to Plaintiff Penn Ridge in the fall of 2012 to schedule the breeding of his mare to Uptowncharlybrown went unreturned, as well as the testimony of Nikolai Taras, who testified

3

that he brought his mare to Penn Ridge to breed with Uptowncharlybrown, but was turned away. (Id. at 12-18.)

Upon detailed review of the evidence of record, and informed by the exacting standards of review governing motions under Rule 59, the Court finds that the jury's verdict regarding Defendants' asserted defense for nonpayment and counterclaim for breach of the agreement to "promote, manage and sell Uptowncharlybrown's stallion seasons," is not contrary to the overwhelming weight of the evidence, and will not result in manifest injustice if allowed to stand, and thus, the Court will not disturb the jury's verdict on this issue. Gov't of V.I. v. Derricks, 810 F.2d 50, 55 (3d Cir. 1987); see Williamson v. Consolidated Rail Corp., 926 F.2d 1344, 1353 (3d Cir.1991) ("[N]ew trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience."). In the Court's view, the jury properly evaluated the credibility of witnesses Brian Montesfusco and Nicolai Taras and declined to embrace their testimony pursuant to the Court's instructions on "Credibility of Witnesses," "Preponderance of the Evidence," and "Material and Immaterial Breaches." As the weight of the evidence supports the jury's finding that Plaintiffs did not breach their respective obligations under the contract, the Court will deny Defendants' motion on that proffered basis.

> 2. **Whether Defendants are Entitled to a New Trial, or in the Alternative, an Alteration or Amendment of the Judgment Because the Identity of the Defendants Against Whom the Verdict was Entered is Against the Weight of the Evidence**

In their post-trial motion, Defendants complain for the first time that the verdict slip did not differentiate between Defendants with regard to Plaintiffs' breach of contract claim. According to Defendants, "the identity of the Defendants against whom the verdict was entered

[is] against the weight of the evidence." (Doc. No. 92 at 18.) Defendants argue that Defendant Hutt was merely a signatory to the disputed contract on behalf of Defendant Fantasy Lane, and thus, could not be held personally liable for the breach of the contract as the jury so found. In the alternative, Defendants request that the Court alter the judgment to reflect that the Fantasy Lane entities, alone, are liable for the breach of contract.[3]

In Pennsylvania, "[i]t is a well[-]established principle of law that a contract cannot legally bind persons not party thereto." In re Barilla, 535 A.2d 125, 128 (Pa. Super. Ct. 1987); see also Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 n.4 (3d Cir. 1976) ("Under Pennsylvania law, generally a person not a party to the contract cannot be liable for a breach."). Indeed, the mere fact that an individual has signed a contract in his capacity as an officer or employee of an entity does not bind him personally to that contract. Poulos v. Nicolaides, 241 F. App'x 25, 27 (3d Cir. 2007) ("Agency principles maintain that if an agent enters into a contract

---

[3] The Court is troubled by Defendants' delay in raising a challenge to Defendant Hutt's individual liability to the contract. Notably, Count I of the amended complaint, asserting a breach of contract claim against "one or more of the Defendants," indicated that the "obligation is believed to be owed by one LLC (Fantasy Lane) to the other [(Penn Ridge Farms)], but, in the alternative, the individuals are also named herein should it be determined that the individuals are the proper parties in interest." (Doc. No. 22 at 3.) In their answer to Plaintiffs' amended complaint, Defendants asserted, as an affirmative defense, that "Defendant Fantasy Lane Thoroughbred Racing Stable, LLC [is] not a party to the Agreement," with no mention of Defendant Hutt's liability. (Doc. No. 23 at 5 ¶ 3.) Curiously, throughout the litigation, Defendants engaged in no motion practice whatsoever addressing whether Defendant Hutt was, in fact, a party to the contract. Despite receiving copies of the jury charge and verdict slip well in advance of the charge conference, which consistently referred to Defendants collectively in the context of Plaintiffs' breach of contract claim, Defendants lodged no objections with regard to their form and substance. Thus, the Court questions whether Defendants effectively waived this particular post-verdict claim, as Defendants cannot be said to have sufficiently placed Plaintiffs or the Court on notice that Defendants were contesting who the proper parties were to the contract. See Chrabaszcz v. Johnston Sch. Comm., 474 F. Supp. 2d 298, 308 (D.R.I. 2007) (finding that "the fact that . . . the defendants failed to specifically argue that Dr. Jolin was not a signatory is not sufficient to establish waiver of this argument because plaintiffs and the court were placed on notice that defendants believed only the parties to the contract could be liable for breach."). Nevertheless, the Court will consider Defendants' request.

5

on behalf of a disclosed principal, the agent does not become a party to the contract.") (citing Publicker Indus., Inc. v. Roman Ceramics Corp., 652 F.2d 340, 343 (3d Cir. 1981)); Viso v. Werner, 369 A.2d 1185, 1187 (Pa. 1977). Applied here, the Court finds that the weight of the evidence and testimony adduced at trial do not support a finding that Defendant Hutt, a signatory on behalf of "Fantasy Lane Stable," agreed to assume personal liability for any contractual breach. See B & L Asphalt Indus., Inc. v. Fusco, 753 A.2d 264, 270 (Pa. Super. Ct. 2000) ("[A] person acting as an agent may assume personal liability on a corporate contract where he executes a contract in his own name or voluntarily undertakes a personal responsibility."). Accordingly, the Court will grant Defendants' alternatively-styled motion under Rule 59(e) by amending the judgment on that basis.

> **3. Whether Defendants are Entitled to a New Trial, or in the Alternative, a New Trial Conditioned on Plaintiffs' Refusal to Accept a Remittitur, Because the Amount of Damages Awarded to Plaintiffs on the Breach of Contract Claim is Against the Weight of the Evidence**

Finally, Defendants claim that the "amount of damages awarded to Plaintiffs on their breach of contract claim is against the weight of the evidence and should be the subject of a new trial or remittitur." (Doc. No. 92 at 19.) According to Defendants, because Plaintiffs presented evidence showing only that Defendants owed overdue invoices for boarding services in the amount of $65,707.47, the jury's breach of contract in the amount of $110,000.00 is contrary to the weight of the evidence. (Id.) In their opposition brief, Plaintiffs acknowledge that that the "bills tendered to Defendants were admittedly in the amount of $65,700.00," but note that those bills ran only through August of 2014. (Doc. No. 93 at 6.) Plaintiffs suggest that the jury considered the undisputed evidence that the horses were boarded at Defendant Penn Ridge's facilities until December 23, 2014, and factored into their award of damages the cost of boarding Defendants' horses from August through December of 2014. (Id. at 6-7.)

6

"Federal law governs the question of whether a remittitur should be granted in diversity actions." Kazan v. Wolinski, 721 F.2d 911, 913 (3d Cir. 1983) (citing Donovan v. Penn Shipping Co., 429 U.S. 648, 649 (1976)). In such diversity cases "'in which state law' governs the claims for relief,' state law also 'suppl[ies] the test for federal-court review of the size of the verdict.'" Tax Matrix Techs., LLC v. Wegmans Food Mkts., Inc., No. 13-6223, 2017 WL 1397218, at *1 (E.D. Pa. Apr. 19, 2017) (quoting Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 426 (1996)); see also Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 279 (1989) ("In reviewing an award of . . . damages, the role of the district court is to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to federal standards developed under Rule 59, whether a new trial or remittitur should be ordered.")). Accordingly, Pennsylvania law supplies the applicable standard for use in making a Rule 59(a) determination in the context of Defendants' motion. In Pennsylvania,

> The grant or refusal of a new trial because of the excessiveness of the verdict is within the discretion of the trial court. This [C]ourt will not find a verdict excessive unless it is so grossly excessive as to shock our sense of justice. We begin with the premise that large verdicts are not necessarily excessive verdicts. Each case is unique and dependent on its own special circumstances . . . .

Tillery v. Children's Hosp. of Phila., 156 A.3d 1233, 1246 (Pa. Super. Ct. 2017), reargument denied (Apr. 24, 2017) (quoting Tindall v. Friedman, 970 A.2d 1159, 1177 (Pa. Super. Ct. 2009) (citations omitted)); see also Haines v. Raven Arms, 640 A.2d 367, 369 (Pa. 1994) ("Judicial reduction of a jury award is appropriate only when the award is plainly excessive and exorbitant. The question is whether the award of damages falls within the uncertain limits of fair and reasonable compensation or whether the verdict so shocks the sense of justice as to suggest the jury was influenced by partiality, prejudice, mistake, or corruption.") (citation omitted); Smalls v. Pittsburgh–Corning Corp., 843 A.2d 410, 414 (Pa. Super. Ct. 2004) ("Remittitur is justified only in limited instances such as . . . where the verdict is plainly excessive, exorbitant, and

7

beyond what the evidence warrants . . . or where the verdict resulted from partiality, prejudice, mistake, or corruption.") (citation omitted).

Informed by the standard governing excessive verdicts, and having combed through the trial testimony and evidence of record, the Court agrees with Plaintiffs that the award of $110,000.00 in damages on Plaintiffs' breach of contract claim is not excessive. Defendants offer no citation to authority in this Circuit to support their position that a damage award will be deemed "excessive" where the amount awarded is simply in excess of the amount claimed. To that end, under Pennsylvania law, a breaching party is liable for damages that would naturally result from the breach. See Ferrer v. Trustees of Univ. of Pa., 825 A.2d 591 (Pa. 2002). Because the jury found that Defendants breached the agreement, the Court cannot conclude that it was improper or unreasonable for the jury to award damages flowing from the breach in the amount of $110,000.00 to compensate Plaintiffs not only for the $65,707.47 in overdue invoices for boarding services rendered through August 31, 2014, but also for any additional monthly charges incurred as a result of boarding the horses from September through December of 2014, assuming that jury found Defendant Hutt's testimony that Plaintiffs "held the horses hostage" during that timeframe lacking in credibility. (Doc. No. 24 at 8:25.) Stated differently, the verdict is not substantially larger than that which the evidence presented at trial could sustain. See Evans v. Port Auth. of N.Y. & N.J., 273 F.3d 346, 351–52 (3d Cir. 2001) ("[A] [d]istrict [c]ourt reviewing a jury verdict has an 'obligation . . . to uphold the jury's award if there exists a reasonable basis to do so.'") (quoting Motter v. Everest & Jennings, Inc., 883 F.2d 1223, 1230 (3d Cir. 1989)); see also Norman v. Elkin, 849 F. Supp. 2d 418, 423 (D. Del. 2012) ("Plaintiff's mere dissatisfaction with the jury's assessment of damages does not constitute manifest injustice.") (citation omitted); Ogden v. Keystone Residence, 226 F.Supp.2d 588, 606 (M.D. Pa. 2002)

("The simple fact that [plaintiff] is unhappy with the result of the [case] is an insufficient basis to grant her relief."). Accordingly, the Court will affirm the jury's award of contract damages in the amount of $110,000.00, as it finds that that the jury's award of damages in an amount $44,292.53 over the $65,707.47 originally demanded is not so "grossly excessive as to shock the judicial conscience." Ponzini v. PrimeCare Med., Inc., 269 F. Supp. 3d 444, 500 (M.D. Pa. 2017), appeal dismissed sub nom. Ponzini v. Monroe Cty., No. 17-3134, 2017 WL 8727421 (3d Cir. Dec. 19, 2017) (quoting Williams v. Martin Marietta Alumina, Inc., 817 F.2d 1030, 1038 (3d Cir. 1987) (citations omitted).

    B.    PLAINTIFFS' DEFAMATION CLAIM

Defendants also challenge the jury's verdict on Plaintiffs' defamation claim. (Doc. No. 92 at 20.) Principally, Defendants maintain that amendment of the judgment under Rule 59(e) is appropriate because the award of punitive damages is unconstitutionally excessive.[4]

The Court agrees with Defendants that the award of punitive damages against Defendant Hutt in the amount of $89,999.00 does not comport with due process mandates. Under Pennsylvania law, "punitive damages are proper when a person's actions are of such an

---

[4] Defendants also argue that, as a matter of law, the statements forming the basis of the defamation claim do not have a defamatory meaning, and thus, urge the Court to alter or amend the judgment under Rule 59(e) to prevent manifest injustice. Having reviewed the statements at issue in connection with the testimony presented at trial, the Court cannot conclude as a matter of law that the statements are not capable of having a defamatory meaning. See Gibney v. Fitzgibbon, 547 F. App'x 111, 113 (3d Cir. 2013) (internal quotation marks omitted) ("In considering whether a statement is capable of defamatory meaning, the court considers 'whether the statement tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third parties from associating or dealing with him.'") (quoting Tucker v. Phila. Daily News, 848 A.2d 113, 124 (Pa. 2004)). The Court's finding on this point is bolstered by the jury's determination that those statements were defamatory in nature, even after detailed instructions from the Court on "Defamation-Obscenities, Insults & Other Verbal Abuse," and "Defamation—Assertion of Fact (Where the Defendant Claims the Communication Was Purely an Expression of Opinion)."

9

outrageous nature as to demonstrate intentional, willful, wanton, or reckless conduct." SHV Coal v. Cont'l Grain Co., 587 A.2d 702, 704 (Pa. 1991).[5] In BMW of North America, Inc. v. Gore, 517 U.S. 559, 560-61 (1996), and in State Farm Mutual Automobile Insurance Co. v. Campbell, 538 U.S. 408, 419 (2003), the United States Supreme Court set forth the three-part test for evaluating the reasonableness of an award of punitive damages:

> (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.[6]

Campbell, 538 U.S. at 409 (citing Gore, 517 U.S. 559, 575).

According to the United States Supreme Court, "the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." Gore, 517 U.S. at 575. Reprehensibility is measured by considering whether:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

Campbell, 538 U.S. at 419.

Applied here, it is apparent that the degree of reprehensibility in Defendant Hutt's conduct was minimal. With respect to the first and second considerations, there was no evidence presented at trial that Plaintiff Jester suffered physical harm as a result of Defendant Hutt's conduct, which thus weighs against a finding of reprehensibility. See Jurinko v. The Med.

---

[5] Pursuant to Pennsylvania law, punitive damage awards are evaluated on the basis of the following factors: "(1) the character of [defendant's] act; (2) the nature and extent of the harm [done to the plaintiff]; and (3) the wealth of the defendant." Pioneer Comm. Funding Corp. v. Am. Fin. Mortg. Corp., 797 A.2d 269, 290 (Pa. Super. Ct. 2002).

[6] The Court declines to address the third guidepost, as there appears to be no applicable civil penalties that offer a point of comparison.

Protective Co., 305 F. App'x 13, 26 (3d Cir. 2008). Moreover, there was no evidence or testimony produced at trial that Defendant Hutt's conduct "evinced an indifference to or a reckless disregard of the health or safety of others." Id. As for whether the target of the conduct had financial vulnerability, this subfactor weighs slightly in favor of a finding of reprehensibility, as the testimony and evidence presented at trial support a conclusion that Plaintiffs were in a financially vulnerable position given the nature of the industry in which they were professionally involved. (Doc. No. 84, Tr. at 60:11-25; 61:1-10; 64:1-19.)

With respect to the fourth subfactor (whether Defendant Hutt's conduct involved repeated actions), the Court is mindful that the "'repeated conduct' cited in Gore involve[s] not merely a pattern of contemptible conduct within one extended transaction . . . but rather specific instances of similar conduct by the defendant in relation to other parties." Willow Inn, Inc. v. Pub. Serv. Mut. Ins. Co., 399 F.3d 224, 232 (3d Cir. 2005) (citation omitted). Indeed, the "'repeated conduct' subfactor will necessarily have 'less force' where the defendant's misconduct did not extend beyond his dealings with the plaintiff." CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc., 499 F.3d 184, 191 (3d Cir. 2007). However, "it may still be 'relevant' in measuring the reprehensibility of the defendant's conduct, based on the particular facts and circumstances presented." Id.

Informed by the foregoing, the Court is persuaded that the defamatory statements at issue, contained in several e-mails directed to a universe of individuals in the industry having an interest in the ongoing operations of Defendant Fantasy Lane, were limited in scope and were sent over a shortened timeframe of a few months. Likewise, the Court finds it notable that the record does not support a pattern of culpable misconduct directed at other parties. Thus, the Court finds that this factor carries less weight in favor of reprehensibility given the facts and

11

circumstances presented at trial. As for the final subfactor, the evidence at trial certainly supports that the publications at issue were intentional, regardless of whether Defendant Hutt knew exactly who would receive them, as Defendants argue.

While three of the five subfactors arguably support, to some degree, a finding of reprehensibility in this case, the Court's assessment of this guidepost ultimately "counsels against the need for such a high award." Id. at 191. Indeed, although the subfactors reveal a level of reprehensibility that supports some award of punitive damages, it is apparent from the testimony and evidence at trial that Defendant Hutt's conduct was not so sufficiently egregious as to warrant a punitive damages award of approximately $90,000.00, especially in light of the fact that the harm suffered was not physical in nature, and that Defendant Hutt's statements did not reflect an indifference to or reckless disregard for the health or safety of others. See id. at 192; (citing Inter Med. Supplies, Ltd. v. EBI Med. Sys., Inc., 181 F.3d 446, 467 (3d Cir. 1999) (recognizing that economic torts are "less worthy of large punitive damages awards than torts inflicting injuries to health or safety")).

Moreover, the second Gore guidepost, i.e., the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award, further bolsters the Court's determination that the punitive damages award is excessive. While "the Supreme Court has been 'reluctant to identify concrete constitutional limits on the ratio,'" it has nevertheless cautioned that, "'in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.'" Id. at 192 (quoting Campbell, 538 U.S. at 424-25). In Gore, the Supreme Court found that the 500 to 1 ratio accompanying a $2 million punitive damage award and $4,000 compensatory damage award "raise[d] a judicial eyebrow." Id. at 583 (citations omitted). Here, the jury awarded punitive damages in an amount

approximately 90,000 times the compensatory damage award of $1.00. While an award exceeding a single-digit multiplier may be justified in cases where "a particularly egregious act has resulted in only a small amount of economic damages," or in cases where the "injury is hard to detect or the monetary value of noneconomic harm [is] . . . difficult to determine," the Court cannot reconcile the nature of Defendant Hutt's conduct and the difficulty in determining the monetary value of Plaintiffs' harm with such a disproportionate award.

Upon consideration of these applicable guideposts, the Court finds that a punitive damage award of $5,500.00 is reasonable and proportionate to the harm suffered by Plaintiffs and conforms to the requirements of the due process clause.[7] Accordingly, the Court will reduce the punitive damages award to $5,500.00.

### C. MOTION FOR PARTIAL SUMMARY JUDGMENT

As a final matter, Defendants request that the Court alter or amend its Memorandum and Order dated March 28, 2017 that granted Plaintiffs' motion for partial summary judgment on Defendants' negligence-based counterclaims on the basis that those claims were barred by a duly executed Release entered into by Defendant Fantasy Lane, Hutt, and Edelson Equine Associates on September 25, 2014. (Doc. No. 92 at 29.) In its Memorandum and Order, the Court found as follows:

> Viewing this evidence in the light most favorable to Defendants, and accepting all reasonable inferences drawn therefrom, the Court finds that Defendants' claim of fraud in the procurement of [Defendant] Hutt's signature to the instrument fails as

---

[7] See Cortez v. Trans Union, LLC, 617 F.3d 688, 716 (3d Cir. 2010) (explaining that a constitutionally reduced verdict does not require conditional acceptance of the reduction from the plaintiff as it "is really not a remittitur at all," but rather, "is a determination that the law does not permit the award. Unlike a remittitur, which is discretionary with the court . . . a court has a mandatory duty to correct an unconstitutionally excessive verdict so that it conforms to the requirements of the due process clause") (quoting Johansen v. Combustion Engineering, Inc., 170 F.3d 1320 (11th Cir.1999)).

13

> a matter of law, as the record is devoid of evidence from which a reasonably minded juror could conclude that [Defendant] Hutt's reliance on the allegedly fraudulent statement contained in the cover letter justified his failure to thoroughly review the revised Release. [Defendant] Hutt, a legally sophisticated former claims manager, willingly and voluntarily signed a revised Release after receiving notice in the cover letter that certain revisions had been made to the Release, and after having engaged in a cursory review of its content. [Defendant] Hutt's reliance on Dr. Edelson's brief summary of the changes his attorney made to the revised Release does not excuse [Defendant] Hutt's failure to read the revised Release, especially when considering his previous experience as a claims manager, his understanding that the cover letter's mention of edits made to the Release was drafted by a veterinarian (not an attorney), and the obvious nature of the alterations made to the Release as demonstrated by the increased page length. In sum, Defendants cannot avoid the effect of the Release "upon the ground that at the time [Defendant Hutt] signed the paper he did not read it or know its contents, but relied on what another said about it." Seaton v. East Windsor Speedway, Inc., 582 A.2d 1380, 1383 (Pa. Super. Ct. 1990) (quoting 66 Am. Jur. 2d Release § 15 (1973)).
>
> Accordingly, because the Release operates as a bar to Defendants' negligence counterclaims, the Court will grant the motion for partial summary judgment in Plaintiffs' favor on Counts I, II, III, and IV.

(Doc. No. 42 at 13.)

In their post-trial motion, Defendants argue that Defendant Hutt's subsequent testimony and demeanor at trial "create[ ] a genuine issue of material fact regarding Hutt's justifiable reliance on Dr. Edelson's letter and thus on whether the release prepared by Dr. Edelson is enforceable." (Doc. No. 92 at 32.) The Court disagrees. Defendant Hutt's demeanor at trial does not undermine or call into question the Court's summary judgment ruling that Defendants had failed to adduce evidence of fraud sufficient to invalidate the Release. Accordingly, the Court will deny Defendants' motion to alter or amend its Memorandum and Order granting summary judgment in favor of Plaintiffs on Defendants' negligence counterclaims.

### III. CONCLUSION

Upon consideration of the foregoing, Defendants' "Motion for a New Trial or Remittitur or, in the Alternative, to Alter or Amend the Judgment," will be granted insofar as the Court will

14

order that the Clerk amend the verdict and judgment on Plaintiffs' breach of contract claim so as to reflect that the Fantasy Lane entities are liable for the breach of contract, and amend the verdict and judgment on Plaintiffs' defamation claim to reflect a reduction of the award of punitive damages to $5,500.00. The motion will be denied in all other respects. An appropriate Order follows.